1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

AMAZON.COM, INC., a Delaware
corporation; AMAZON.COM SERVICES
LLC, a Delaware limited liability company;
GENERAL ELECTRIC COMPANY, a New
York corporation; and HAIER US
APPLIANCE SOLUTIONS, INC., DBA GE
APPLIANCES, a Delaware corporation,

Plaintiffs,

v.

Individuals and entities doing business as the
following Amazon Selling Accounts:
KEXLEWATERFILTERS; HOM-POWER
STORE; NO-MIIMS; CLANORY;
TOMORROW-CITYSTOR; HOMASZ;
ROMAROTIC; DROPSALES; TAMEI-US;
DANIELJAMES; ICEPY; WANHAOFILTER;
HNAMZ-US; DOOBOO-US; PURTECH; and
BARCELONA-US; and DOES 1-10,

Defendants.

No.:

**COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF**

10
11
12
13
14
15
16
17
18
19
20
21
22

## I.    INTRODUCTION

23
24      1.      This case involves Defendants' unlawful and expressly prohibited sale of

25  counterfeit GE-branded water filters in the Amazon.com store (the "Amazon Store").

26  Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon"), and General

27  Electric Company ("General Electric") and Haier US Appliance Solutions, Inc. dba GE

28  Appliances ("GE Appliances") (collectively altogether, "Plaintiffs") jointly bring this lawsuit to

1   permanently prevent and enjoin Defendants from causing future harm to Plaintiffs' customers,

2   reputations, and intellectual property ("IP"), and to hold Defendants accountable for their illegal

3   actions.

4       2.      Amazon owns and operates the Amazon Store and equivalent counterpart

5   international stores and websites.  Amazon's stores offer products and services to customers in

6   more than 100 countries around the globe.  Some of the products are sold directly by Amazon,

7   while others are sold by Amazon's numerous third-party selling partners.  The Amazon brand is

8   one of the most well-recognized, valuable, and trusted brands in the world.  To protect its

9   customers and safeguard its reputation for trustworthiness, Amazon invests heavily in both time

10  and resources to prevent counterfeit and infringing goods from being sold in its stores.  In 2021

11  alone, Amazon invested over $900 million and employed more than 12,000 people to protect its

12  stores from fraud and abuse.  Amazon stopped over 2.5 million suspected bad actor selling

13  accounts before they published a single listing for sale.

14      3.      General Electric owns, manages, enforces, licenses, and maintains IP, including

15  various trademarks.  Relevant to this Complaint, General Electric owns the following registered

16  trademarks ("GE Trademarks").

| **Mark** | **Registration No.**<br>**(International Classes)** |
|:---:|:---:|
| GE | Registration No. 2,890,028 (IC 009, 011) |
|  | Registration No. 2,663,243 (IC 011) |

24  True and correct copies of the registration certificates for the GE Trademarks are attached as

25  **Exhibit A**.  The General Electric company logo—known as the monogram—has existed since

26  shortly after the company was founded by Thomas A. Edison in 1889 and remained largely

27  unchanged for 125 years.  The iconic GE logo was recently valued at $20 billion.

28

4.     For over 100 years, the GE Appliances business has innovated and built quality products that are trusted in half of all homes in the United States.  GE Appliances was previously a division of General Electric until its sale in June 2016 to Haier Smart Home Co., Ltd.  Haier US Appliance Solutions, Inc. is a wholly-owned subsidiary of Haier Smart Home Co., Ltd, and does business as GE Appliances.

5.     GE Appliances is one of the largest appliance companies in the United States and each year builds 2,500 units per hour, delivers an appliance every 4.5 seconds, and ships 25 million parts and accessories.  In addition to water filters, GE Appliances manufactures a full suite of household appliances, including refrigerators, freezers, cooking products, dishwashers, dryers, air conditioners, small appliances, and water heaters.

6.     GE Appliances has an exclusive license from General Electric to use the GE Trademarks in connection with the manufacture, importation, exportation, packaging, display, sale, marketing, advertising, promotion, distribution, delivery, performance, and provision of refrigerator water filters.

7.     Defendants advertised, marketed, offered, and sold counterfeit GE-branded water filters in the Amazon Store, using the GE Trademarks, without authorization, to deceive customers about the authenticity and origin of the products and the products' affiliation with General Electric and GE Appliances.

8.     As a result of their illegal actions, Defendants have infringed and misused General Electric's IP, willfully deceived and harmed Plaintiffs and their customers, compromised the integrity of the Amazon Store, and undermined the trust that customers place in Plaintiffs.  Defendants' illegal actions have caused Plaintiffs to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from inflicting future harm on Plaintiffs and their customers.

## II.     PARTIES

9.     Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington.  Amazon.com Services LLC is a Delaware company with its principal place of business in Seattle, Washington.

10.     General Electric Company is a New York corporation with its principal place of business in Boston, Massachusetts.

11.     Haier US Appliance Solutions, Inc. dba GE Appliances is a Delaware corporation with its principal place of business in Louisville, Kentucky.  GE Appliances was previously a division of General Electric until its sale in June 2016 to Haier Smart Home Co., Ltd.  Haier US Appliance Solutions, Inc. is a wholly-owned subsidiary of Haier Smart Home Co., Ltd.  GE Appliances manufactures appliances under a house of brands that include GE, GE Profile, Café, Monogram, Haier, and Hotpoint.

12.     Defendants are a collection of individuals and entities, both known and unknown, who conspired and operated in concert with each other to engage in the counterfeiting scheme alleged in this Complaint.  Defendants took intentional and affirmative steps to hide their true identities and whereabouts from Plaintiffs by using fake names and/or contact information, and unregistered business to conduct their activities.  Defendants are subject to liability for their wrongful conduct both directly and under principles of secondary liability including, without limitation, *respondeat superior*, vicarious liability, and/or contributory infringement.

13.     On information and belief, at least one defendant is an individual or entity doing business as KexleWaterFilters (the "KexleWaterFilters Defendant" or "KexleWaterFilters Selling Account") that provided a business address in Brooklyn, New York.  On further information and belief, the KexleWaterFilters Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

14.     On information and belief, at least one defendant is an individual or entity doing business as HOM-POWER Store (the "HOM-POWER Store Defendant" or "HOM-POWER Store Selling Account") that provided a business address in Yichang City, China.  On further information and belief, the HOM-POWER Store Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

15.     On information and belief, at least one defendant is an individual or entity doing business as NO-MIIMS (the "NO-MIIMS Defendant" or "NO-MIIMS Selling Account") that provided a business address in Easton, Maryland.  On further information and belief, the NO-MIIMS Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

16.     On information and belief, at least one defendant is an individual or entity doing business as CLANORY (the "CLANORY Defendant" or "CLANORY Selling Account") that provided a business address in Guangzhou, China.  On further information and belief, the CLANORY Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

17.     On information and belief, at least one defendant is an individual or entity doing business as Tomorrow-Citystor (the "Tomorrow-Citystor Defendant" or "Tomorrow-Citystor Selling Account") that provided a business address in Shenzhen, China.  On further information and belief, the Tomorrow-Citystor Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

18.     On information and belief, at least one defendant is an individual or entity doing business as HOMASZ (the "HOMASZ Defendant" or "HOMASZ Selling Account") that provided a business address in Qingdao, China.  On further information and belief, the HOMASZ Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

19.     On information and belief, at least one defendant is an individual or entity doing business as Romarotic (the "Romarotic Defendant" or "Romarotic Selling Account") that provided a business address in Linthicum Heights, Maryland.  On further information and belief, the Romarotic Defendant personally participated in and/or had the right and ability to supervise,

direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

20. On information and belief, at least one defendant is an individual or entity doing business as Dropsales (the "Dropsales Defendant" or "Dropsales Selling Account") that provided a business address in Guangzhou, China. On further information and belief, the Dropsales Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

21. On information and belief, at least one defendant is an individual or entity doing business as Tamei-US (the "Tamei-US Defendant" or "Tamei-US Selling Account") that provided a business address in Shenzhen, China. On further information and belief, the Tamei-US Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

22. On information and belief, at least one defendant is an individual or entity doing business as DanielJames (the "DanielJames Defendant" or "DanielJames Selling Account") that provided a business address in Jinzhong, China. On further information and belief, the DanielJames Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

23. On information and belief, at least one defendant is an individual or entity doing business as icepy (the "icepy Defendant" or "icepy Selling Account") that provided a business address in Yichang, China. On further information and belief, the icepy Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

24. On information and belief, at least one defendant is an individual or entity doing business as WanHaoFilter (the "WanHaoFilter Defendant" or "WanHaoFilter Selling Account")

that provided a business address in Yichang, China. On further information and belief, the WanHaoFilter Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

25.    On information and belief, at least one defendant is an individual or entity doing business as HNAMZ-US (the "HNAMZ-US Defendant" or "HNAMZ-US Selling Account") that provided a business address in Haikou, China. On further information and belief, the HNAMZ-US Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

26.    On information and belief, at least one defendant is an individual or entity doing business as DOOBOO-US (the "DOOBOO-US Defendant" or "DOOBOO Selling Account") that provided a business address in Yichang, China. On further information and belief, the DOOBOO-US Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

27.    On information and belief, at least one defendant is an individual or entity doing business as Purtech (the "Purtech Defendant" or "Purtech Selling Account") that provided a business address in Suzhou, China. On further information and belief, the Purtech Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

28.    On information and belief, at least one defendant is an individual or entity doing business as Barcelona-US (the "Barcelona-US Defendant" or "Barcelona-US Selling Account") that provided a business address in Walnut, California. On further information and belief, Defendant Barcelona-US personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

29.     On information and belief, Defendants Does 1-10 (the "Doe Defendants") are individuals and entities working in active concert with each other and the named Defendants to knowingly and willfully manufacture, import, advertise, market, offer, and sell counterfeit GE-branded products.  The identities of the Doe Defendants are presently unknown to Plaintiffs.

### III.     JURISDICTION AND VENUE

30.     The Court has subject matter jurisdiction over General Electric's Lanham Act claim for trademark infringement, and Amazon's, General Electric's, and GE Appliances' Lanham Act claims for false designation of origin and false advertising, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).  The Court has subject matter jurisdiction over Plaintiffs' claims for violation of the Washington Consumer Protection Act pursuant to 28 U.S.C. §§ 1332 and 1367.

31.     The Court has personal jurisdiction over all Defendants because they transacted business and committed tortious acts within and directed to the State of Washington, and Plaintiffs' claims arise from those activities.  Defendants affirmatively undertook to do business with Amazon, a corporation with its principal place of business in Washington, and sold in the Amazon Store water filters bearing counterfeit versions of the GE Trademarks and which otherwise infringed General Electric's IP.  Defendants shipped products bearing counterfeit versions of the GE Trademarks to consumers in Washington.  Each of the Defendants committed, or facilitated the commission of, tortious acts in Washington and has wrongfully caused Plaintiffs substantial injury in Washington.

32.     Further, the named Defendants have consented to the jurisdiction of this Court by agreeing to the Amazon Services Business Solutions Agreement ("BSA"), which provides that the "Governing Courts" for claims to enjoin infringement or misuse of intellectual property rights are state or federal courts located in King County, Washington.

33.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington.

34.    Venue is also proper in this Court because Defendants consented to it under the BSA.

35.    Pursuant to Local Civil Rule 3(e), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Amazon resides, (b) injuries giving rise to suit occurred, and (c) Defendants directed their unlawful conduct.

## IV.    FACTS

### A.    Amazon's Efforts to Prevent the Sale of Counterfeit Goods

36.    Amazon works hard to build and protect the reputation of its stores as a place where customers can conveniently select from a wide array of authentic goods and services at competitive prices.  Amazon invests vast resources to ensure that when customers make purchases in Amazon's stores—either directly from Amazon or from one of its millions of third-party sellers—customers receive authentic products made by the true manufacturer of those products.

37.    A small number of bad actors seek to take advantage of the trust that customers place in Amazon by attempting to create Amazon selling accounts to advertise, market, offer, and sell counterfeit products.  These bad actors seek to misuse and infringe the trademarks and other IP of the true manufacturers of those products to deceive Amazon and its customers.  This unlawful and expressly prohibited conduct undermines the trust that customers, sellers, and manufacturers place in Amazon, and tarnishes Amazon's brand and reputation, thereby causing irreparable harm to Amazon.

38.    Amazon prohibits the sale of inauthentic and fraudulent products and is constantly innovating on behalf of customers and working with brands, manufacturers, rights owners, and others to improve the detection and prevention of counterfeit products from ever being offered to customers in Amazon's stores.  Amazon employs dedicated teams of software engineers, research scientists, program managers, and investigators to prevent counterfeits from being offered in Amazon's stores.  Amazon's systems automatically and continuously scan thousands of data points to detect and remove counterfeits from its stores and to terminate the selling accounts of bad actors before they can offer counterfeit products.  When Amazon identifies

issues based on this feedback, it takes action to address them.  Amazon also uses this intelligence to improve its proactive prevention controls.

39.    In 2017, Amazon launched the Amazon Brand Registry, a free service to any rights owner with a government-registered trademark, regardless of the brand's relationship with Amazon.  Brand Registry delivers automated brand protections that use machine learning to predict infringement and proactively protect brands' IP.  Brand Registry also provides a powerful Report a Violation Tool that allows brands to search for and accurately report potentially infringing products using state-of-the-art image search technology.  More than 700,000 brands, including General Electric and GE Appliances, are enrolled in Brand Registry, and those brands are finding and reporting 99% fewer suspected infringements since joining Brand Registry.

40.    In 2018, Amazon launched Transparency, a product serialization service that effectively eliminates counterfeits for enrolled products.  Brands enrolled in Transparency can apply a unique 2D code to every unit they manufacture, which allows Amazon, other retailers, law enforcement, and customers to determine the authenticity of any Transparency-enabled product, regardless of where the product was purchased.  In 2021, over 23,000 brands were using Transparency, enabling the protection of more than 750 million product units.

41.    In 2019, Amazon launched Amazon Project Zero, a program to empower brands to help Amazon drive counterfeits to zero.  Amazon's Project Zero introduced a novel self-service counterfeit removal tool that enables brands to remove counterfeit listings directly from Amazon's stores.  This enables brands to take down counterfeit product offerings on their own within minutes.  In 2021, there were more than 20,000 brands enrolled in Project Zero.  For every listing removed by a brand, Amazon's automated protections removed more than 1,000 listings through scaled technology and machine learning, stopping those listings from appearing in Amazon's stores.

42.    Amazon has robust seller verification processes, deploying industry-leading technology to analyze hundreds of unique data points and robust processes to verify information provided by potential sellers.  In 2021, Amazon prevented over 2.5 million attempts to create new selling accounts, stopping bad actors before they published a single product for sale.

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

Amazon is also constantly innovating on these tools and systems.  For example, Amazon requires prospective sellers to have one-on-one conversations with one of its team members to verify the seller's identity and documentation, further enhanced through verification of the seller's physical location and payment instruments.  Amazon also leverages machine learning models that use hundreds of data points about the prospective account to detect risk, including relations to previously-enforced bad actors.  These measures have made it more difficult for bad actors to hide.

43.    Once a seller begins selling in Amazon's stores, Amazon continues to monitor the selling account's activities for risks.  If Amazon identifies a bad actor, it closes that actor's selling account, withholds funds disbursement, and investigates whether other accounts are involved in unlawful activities.

44.    In addition to the measures discussed above, Amazon actively cooperates with rights owners and law enforcement to identify and prosecute bad actors suspected of engaging in illegal activity.  Lawsuits, like this one, are integral components of Amazon's efforts to combat counterfeits.

**B.    GE Appliances and Its Anti-Counterfeiting Efforts**

45.    GE Appliances goes to great lengths to protect consumers from counterfeits of its products and is committed to leading efforts to combat counterfeit products.  GE Appliances utilizes both internal and external resources to combat counterfeits and piracy online.  For example, GE Appliances has worked cooperatively with U.S. Customs and Border Protection ("CBP") in connection with CBP's port seizures of counterfeit GE-branded water filters.  Additionally, GE Appliances trains internal staff who monitor online retailer sites around the world for intellectual property infringements and counterfeit sellers.  GE Appliances also hires personnel who are qualified to identify genuine GE-branded water filters and water filters that claim to be GE-branded that are counterfeit.  GE Appliances has also invested in technology solutions to thwart potential counterfeiting efforts in newer water filter models.

46.    GE Appliances is also committed to leading public advocacy efforts to combat counterfeit products.  Those efforts include partnering with the Association of Home Appliance

1  Manufacturers in connection with its "Filter it Out" counterfeit water filter awareness campaign.
2  Through that campaign, GE Appliances helped develop evidence that counterfeit water filters not
3  only fail to perform as advertised, but in several cases can also introduce harmful contaminants
4  into drinking water.

5  **C.    The Defendants Created Amazon Selling Accounts and Agreed Not to Sell
6          Counterfeit Goods**

7      47.    The Defendants controlled and operated the sixteen selling accounts identified in
8  Section D below, through which they sought to advertise, market, sell, and distribute counterfeit
9  GE-branded products.  In connection with these selling accounts, Defendants provided names,
10 email addresses, and banking information for each account.  On information and belief, the
11 Defendants took active steps to mislead Amazon and conceal their true locations and identities
12 by providing false information.

13     48.    To become a third-party seller in the Amazon Store, sellers are required to agree
14 to the BSA, which governs the applicant's access to and use of Amazon's services and states
15 Amazon's rules for selling in the Amazon Store.  By entering into the BSA, each seller
16 represents and warrants that it "will comply with all applicable Laws in [the] performance of its
17 obligations and exercise of its rights" under the BSA.  A true and correct copy of the applicable
18 version of the BSA, namely, the version the Defendants last agreed to when using Amazon's
19 Services, is attached as **Exhibit B**.

20     49.    Under the terms of the BSA, Amazon specifically identifies the sale of counterfeit
21 goods as "deceptive, fraudulent, or illegal activity" in violation of Amazon's policies, reserving
22 the right to withhold payments and terminate the account of any seller who engages in such
23 conduct.  Ex. B, ¶¶ 2-3.  The BSA requires the seller to defend, indemnify, and hold harmless
24 Amazon against any claims or losses arising from the seller's "actual or alleged infringement of
25 any Intellectual Property Rights."  *Id.* ¶ 6.1.

26     50.    Additionally, the BSA incorporates, and sellers therefore agree to be bound by,
27 Amazon's Anti-Counterfeiting Policy, the applicable version of which is attached as **Exhibit C**.

28

The Anti-Counterfeiting Policy expressly prohibits the sale of counterfeit goods in the Amazon Store:

- The sale of counterfeit products is strictly prohibited.

- You may not sell any products that are not legal for sale, such as products that have been illegally replicated, reproduced, or manufactured[.]

- You must provide records about the authenticity of your products if Amazon requests that documentation[.]

Failure to abide by this policy may result in loss of selling privileges, funds being withheld, destruction of inventory in our fulfillment centers, and other legal consequences.

51.    Amazon's Anti-Counterfeiting Policy further describes Amazon's commitment to preventing the sale and distribution of counterfeit goods in the Amazon Store together with the consequences of doing so:

- Sell Only Authentic and Legal Products.  It is your responsibility to source, sell, and fulfill only authentic products that are legal for sale. Examples of prohibited products include:

  o  Bootlegs, fakes, or pirated copies of products or content

  o  Products that have been illegally replicated, reproduced, or manufactured

  o  Products that infringe another party's intellectual property rights

- Maintain and Provide Inventory Records.  Amazon may request that you provide documentation (such as invoices) showing the authenticity of your products or your authorization to list them for sale.  You may remove pricing information from these documents, but providing documents that have been edited in any other way or that are misleading is a violation of this policy and will lead to enforcement against your account.

- Consequences of Selling Inauthentic Products.   If you sell inauthentic products, we may immediately suspend or terminate your Amazon selling account (and any related accounts), destroy any inauthentic products in our fulfillment centers at your expense, and/or withhold payments to you.

- Amazon Takes Action to Protect Customers and Rights Owners. Amazon also works with manufacturers, rights holders, content owners, vendors, and sellers to improve the ways we detect and prevent inauthentic products from reaching our customers.  As a result of our detection and enforcement activities, Amazon may:

  o Remove suspect listings.

  o Take legal action against parties who knowingly violate this policy and harm our customers.  In addition to criminal fines and imprisonment, sellers and suppliers of inauthentic products may face civil penalties including the loss of any amounts received from the sale of inauthentic products, the damage or harm sustained by the rights holders, statutory and other damages, and attorney's fees.

- Reporting Inauthentic Products.  We stand behind the products sold on our site with our A-to-z Guarantee, and we encourage rights owners who have product authenticity concerns to notify us.  We will promptly investigate and take all appropriate actions to protect customers, sellers, and rights holders.  You may view counterfeit complaints on the Account Health page in Seller Central.

52.    When they registered as third-party sellers in the Amazon Store and established their selling accounts, the Defendants agreed not to advertise, market, offer, sell, or distribute counterfeit products.

**D.    Defendants' Sale of Counterfeit GE-Branded Products**

53.    The Defendants advertised, marketed, offered, and sold water filters bearing counterfeit versions of the GE Trademarks in the Amazon Store.

54.    In multiple instances, Amazon quarantined the versions of the water filters that the Defendants shipped to Amazon for sale and sent samples to GE Appliances representatives for review.  GE Appliances, in turn, confirmed that the samples are counterfeit, *i.e.*, are infringing products made to imitate authentic GE water filters and bear marks that are identical to or substantially indistinguishable from GE's Trademarks.

55.    In another instance, as set forth below, Plaintiffs also facilitated test purchases from a common supplier used by many of the Defendants and determined that the purported GE-branded water filters that it supplied are counterfeit.

### i.  KexleWaterFilters Selling Account

56.    At all times described herein, the KexleWaterFilters Selling Account was controlled and operated by the KexleWaterFilters Defendant and, on information and belief, other unknown parties.

57.    From November 28, 2020 through at least June 20, 2021, the KexleWaterFilters Defendant advertised, marketed, offered, and sold inauthentic water filters in the Amazon Store bearing unauthorized GE Trademarks through the KexleWaterFilters Selling Account.  Amazon quarantined inauthentic GE-branded water filters that the KexleWaterFilters Defendant shipped to Amazon for sale and sent a sample to GE Appliances representatives for review.  GE Appliances examined the product and determined it was a counterfeit.

### ii.  HOM-POWER Store Selling Account

58.    At all times described herein, the HOM-POWER Store Selling Account was controlled and operated by the HOM-POWER Store Defendant and, on information and belief, other unknown parties.

59.    From July 22, 2020, through at least June 1, 2021, the HOM-POWER Store Defendant advertised, marketed, offered, and sold inauthentic water filters in the Amazon Store bearing unauthorized GE Trademarks through the HOM-POWER Store Selling Account. Amazon quarantined inauthentic GE-branded water filters that the HOM-POWER Store Defendant shipped to Amazon for sale and sent a sample to GE Appliances representatives for review.  GE Appliances examined the product and determined it was a counterfeit.

### iii.  NO-MIIMS Selling Account

60.    At all times described herein, the NO-MIIMS Selling Account was controlled and operated by the NO-MIIMS Defendant and, on information and belief, other unknown parties.

61.    From February 10, 2021, through at least May 14, 2021, the NO-MIIMS Defendant advertised, marketed, offered, and sold inauthentic water filters in the Amazon Store bearing unauthorized GE Trademarks through the NO-MIIMS Selling Account.  Amazon quarantined an inauthentic GE-branded water filter that the NO-MIIMS Defendant shipped to

Amazon for sale and sent a sample to GE Appliances representatives for review.  GE Appliances examined the product and determined it was a counterfeit.

### iv.   CLANORY Selling Account

62.   At all times described herein, the CLANORY Selling Account was controlled and operated by the CLANORY Defendant and, on information and belief, other unknown parties.

63.   From November 18, 2019, through at least June 7, 2021, the CLANORY Defendant advertised, marketed, offered, and sold inauthentic water filters in the Amazon Store bearing unauthorized GE Trademarks through the CLANORY Selling Account.  Amazon quarantined an inauthentic GE-branded water filter that the CLANORY Defendant shipped to Amazon for sale and sent a sample to GE Appliances representatives for review.  GE Appliances examined the product and determined it was a counterfeit.

### v.   Tomorrow-Citystor Selling Account

64.   At all times described herein, the Tomorrow-Citystor Selling Account was controlled and operated by the Tomorrow-Citystor Defendant and, on information and belief, other unknown parties.

65.   From August 10, 2020, through at least May 29, 2021, the Tomorrow-Citystor Defendant advertised, marketed, offered, and sold inauthentic water filters in the Amazon Store bearing unauthorized GE Trademarks through the Tomorrow-Citystor Selling Account.  Amazon quarantined an inauthentic GE-branded water filter that the Tomorrow-Citystor Defendant shipped to Amazon for sale and sent a sample to GE Appliances representatives for review.  GE Appliances examined the product and determined it was a counterfeit.

### vi.   HOMASZ Selling Account

66.   At all times described herein, the HOMASZ Selling Account was controlled and operated by the HOMASZ Defendant and, on information and belief, other unknown parties.

67.   From October 31, 2020, through at least May 30, 2021, the HOMASZ Defendant advertised, marketed, offered, and sold inauthentic water filters in the Amazon Store bearing unauthorized GE Trademarks through the HOMASZ Selling Account.  Amazon quarantined an inauthentic GE-branded water filter that the HOMASZ Defendant shipped to Amazon for sale

and sent a sample to GE Appliances representatives for review.  GE Appliances examined the product and determined it was a counterfeit.

### vii.    Romarotic Selling Account

68.    At all times described herein, the Romarotic Selling Account was controlled and operated by the Romarotic Defendant and, on information and belief, other unknown parties.

69.    From January 14, 2020, through at least May 5, 2021, the Romarotic Defendant advertised, marketed, offered, and sold inauthentic water filters in the Amazon Store bearing unauthorized GE Trademarks through the Romarotic Selling Account.  Amazon quarantined an inauthentic GE-branded water filter that the Romarotic Defendant shipped to Amazon for sale and sent a sample to GE Appliances representatives for review.  GE Appliances examined the product and determined it was a counterfeit.

### viii.    Dropsales Selling Account

70.    At all times described herein, the Dropsales Selling Account was controlled and operated by the Dropsales Defendant and, on information and belief, other unknown parties.

71.    From November 29, 2019, through at least September 13, 2020, the Dropsales Defendant advertised, marketed, offered, and sold inauthentic water filters in the Amazon Store bearing unauthorized GE Trademarks through the Dropsales Selling Account.  Amazon quarantined an inauthentic GE-branded water filter that the Dropsales Defendant shipped to Amazon for sale and sent a sample to GE Appliances representatives for review.  GE Appliances examined the product and determined it was a counterfeit.

### ix.    Tamei-US Selling Account

72.    At all times described herein, the Tamei-US Selling Account was controlled and operated by the Tamei-US Defendant and, on information and belief, other unknown parties.

73.    From August 19, 2020, through at least May 14, 2021, the Tamei-US Defendant advertised, marketed, offered, and sold inauthentic water filters in the Amazon Store bearing unauthorized GE Trademarks through the Tamei-US Selling Account.  Amazon quarantined an inauthentic GE-branded water filter that the Tamei-US Defendant shipped to Amazon for sale

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

and sent a sample to GE Appliances representatives for review.  GE Appliances examined the product and determined it was a counterfeit.

### x.    DanielJames Selling Account

74.    At all times described herein, the DanielJames Selling Account was controlled and operated by the DanielJames Defendant and, on information and belief, other unknown parties.

75.    From October 15, 2020, through at least June 16, 2021, the DanielJames Defendant advertised, marketed, offered, and sold inauthentic water filters in the Amazon Store bearing unauthorized GE Trademarks through the DanielJames Selling Account.  Amazon quarantined an inauthentic GE-branded water filter that the DanielJames Defendant shipped to Amazon for sale and sent a sample to GE Appliances representatives for review.  GE Appliances examined the product and determined it was a counterfeit.

### xi.    icepy Selling Account

76.    At all times described herein, the icepy Selling Account was controlled and operated by the icepy Defendant and, on information and belief, other unknown parties.

77.    From approximately August 25, 2020 through at least December 31, 2020, the icepy Defendant advertised, marketed, offered, and sold inauthentic water filters in the Amazon Store bearing unauthorized GE Trademarks through the icepy Selling Account.  Amazon quarantined an inauthentic GE-branded water filter that the icepy Defendant shipped to Amazon for sale and sent a sample to GE Appliances representatives for review.  GE Appliances examined the product and determined it was a counterfeit.

### xii.    WanHaoFilter Selling Account

78.    At all times described herein, the WanHaoFilter Selling Account was controlled and operated by the WanHaoFilter Defendant and, on information and belief, other unknown parties.

79.    From approximately November 1, 2020 through at least June 19, 2021, the WanHaoFilter Defendant advertised, marketed, offered, and sold inauthentic water filters in the Amazon Store bearing unauthorized GE Trademarks through the WanHaoFilter Selling Account.

1  Amazon quarantined an inauthentic GE-branded water filter that the WanHaoFilter Defendant

2  shipped to Amazon for sale and sent a sample to GE Appliances representatives for review.  GE

3  Appliances examined the product and determined it was a counterfeit.

4                 **xiii.**    **HNAMZ-US Selling Account**

5         80.     At all times described herein, the HNAMZ-US Selling Account was controlled

6  and operated by the HNAMZ-US Defendant and, on information and belief, other unknown

7  parties.

8         81.     From approximately October 28, 2020 through at least May 15, 2021, the

9  HNAMZ-US Defendant advertised, marketed, offered, and sold inauthentic water filters in the

10  Amazon Store bearing unauthorized GE Trademarks through the HNAMZ-US Selling Account.

11  Amazon quarantined an inauthentic GE-branded water filter that the HNAMZ-US Defendant

12  shipped to Amazon for sale and sent a sample to GE Appliances representatives for review.  GE

13  Appliances examined the product and determined it was a counterfeit.

14                 **xiv.**    **DooBoo-US Selling Account**

15         82.     At all times described herein, the DooBoo-US Selling Account was controlled and

16  operated by the DooBoo-US Defendant and, on information and belief, other unknown parties.

17         83.     From approximately November 19, 2020 through at least June 6, 2021, the

18  DooBoo-US Defendant advertised, marketed, offered, and sold inauthentic water filters in the

19  Amazon Store bearing unauthorized GE Trademarks through the DooBoo-US Selling Account.

20  Amazon quarantined an inauthentic GE-branded water filter that the DooBoo-US Defendant

21  shipped to Amazon for sale and sent a sample to GE Appliances representatives for review.  GE

22  Appliances examined the product and determined it was a counterfeit.

23                 **xv.**    **Purtech Selling Account**

24         84.     At all times described herein, the Purtech Selling Account was controlled and

25  operated by the Purtech Defendant and, on information and belief, other unknown parties.

26         85.     From approximately July 31, 2020 through at least September 14, 2021, the

27  Purtech Defendant advertised, marketed, offered, and sold inauthentic water filters in the

28  Amazon Store bearing unauthorized GE Trademarks through the Purtech Selling Account.

1    Amazon quarantined an inauthentic GE-branded water filter that the Purtech Defendant shipped

2    to Amazon for sale and sent a sample to GE Appliances representatives for review.  GE

3    Appliances examined the product and determined it was a counterfeit.

### xvi.    Barcelona-US Selling Account

86.    At all times described herein, the Barcelona-US Selling Account was controlled

and operated by the Barcelona-US Defendant and, on information and belief, other unknown

parties.

87.    From approximately January 18, 2021 through at least March 17, 2021, the

Barcelona-US Defendant advertised, marketed, offered, and sold inauthentic water filters in the

Amazon Store bearing unauthorized GE Trademarks through the Barcelona-US Selling Account.

Amazon quarantined an inauthentic GE-branded water filter that the Barcelona-US Defendant

shipped to Amazon for sale and sent a sample to GE Appliances representatives for review.  GE

Appliances examined the product and determined it was a counterfeit.

### E.    Defendants' Coordinated Sale of Counterfeit GE-Branded Products

88.    On information and belief, Defendants operated in concert with one another and

with other parties in their counterfeiting activities.

89.    The Defendants are associated through common physical addresses, shipping

addresses, phone numbers, email addresses, and/or IP addresses provided to Amazon or used to

access their Amazon Selling Accounts.  Defendants' association is further demonstrated through

Defendants' use of similar deceptive tactics to evade detection, the use of the same suppliers, and

the use of interconnected and/or substantially similar listings.

### F.    Amazon Shut Down the Defendants' Selling Accounts

90.    By selling counterfeit GE-branded products, the Defendants falsely represented to

Amazon and its customers that the products Defendants sold were genuine products made by GE

Appliances.  The Defendants also knowingly and willfully used General Electric's IP in

connection with the advertisement, marketing, distribution, offering for sale, and sale of the

counterfeit and infringing GE-branded products.

91.     At all times, the Defendants knew they were prohibited from violating third-party IP rights or any applicable laws while selling products in the Amazon Store.  The Defendants have deceived Amazon's customers and Amazon, infringed and misused the IP rights of General Electric, harmed the integrity of and customer trust in the Amazon Store, and tarnished Amazon's and General Electric's brands.

92.     Once Amazon verified the Defendants' unlawful sale of the counterfeit GE-branded products, it blocked the Defendants' Selling Accounts.  In doing so, Amazon exercised its rights under the BSA to protect customers and the reputations of Plaintiffs.

93.      Pursuant to Amazon's A-to-z Guarantee, Amazon also proactively issued full refunds to customers who purchased purported GE-branded products from the Defendants. Defendants have not reimbursed Amazon.

## V.     CLAIMS

### FIRST CLAIM
*(by General Electric against all Defendants)*
**Trademark Infringement – 15 U.S.C. § 1114**

94.     Plaintiff General Electric incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

95.     Defendants' activities constitute infringement of the GE Trademarks as described in the paragraphs above.

96.     Pursuant to a license granted by General Electric, GE Appliances advertises, markets, offers, and sells products using the GE Trademarks described above and uses those trademarks to distinguish its products from the products and related items of others in the same or related fields.

97.     Because of GE Appliances' long, continuous, and licensed use of the GE Trademarks identified in this Complaint, the GE Trademarks have come to mean and are understood by customers and the public to signify products from General Electric and GE Appliances.

98.     Defendants unlawfully advertised, marketed, offered, and sold water filters bearing counterfeit versions of the GE Trademarks with the intent and likelihood of causing

customer confusion, mistake, and deception as to the products' source, origin, and authenticity. Specifically, Defendants intended for customers to believe, incorrectly, that the products originated from, were affiliated with, and/or were authorized by General Electric or GE Appliances, and likely caused such erroneous customer beliefs.

99.    As a result of Defendants' wrongful conduct, General Electric is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b).  Alternatively, General Electric is entitled to statutory damages under 15 U.S.C. § 1117(c).

100.    General Electric is further entitled to injunctive relief, including an order impounding all infringing products and promotional materials in Defendants' possession. General Electric has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the GE Trademarks are unique and valuable properties that have no readily determinable market value; (b) Defendants' infringement constitutes harm to General Electric and General Electric's reputation and goodwill such that General Electric could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and (d) Defendants' wrongful conduct and the resulting harm to General Electric is likely to be continuing.

## SECOND CLAIM
### (by General Electric and GE Appliances against all Defendants)
### False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a)

101.    Plaintiffs General Electric and GE Appliances incorporate by reference the allegations of the preceding paragraphs as though set forth herein.

102.    General Electric owns the GE Trademarks and has granted a license to GE Appliances to advertise, market, offer, and sell products using the GE Trademarks described above and uses those trademarks to distinguish its products from the products and related items of others in the same or related fields.

103.    Because of GE Appliances' long, continuous, and licensed use of the GE Trademarks for water filters, they have come to mean and are understood by customers, end users, and the public to signify products from General Electric and GE Appliances.

104.    Defendants' wrongful conduct includes the infringement of the GE Trademarks in connection with Defendants' commercial advertising or promotion, and the offering for sale and sale of a counterfeit GE-branded product in interstate commerce.

105.    In advertising, marketing, offering, and selling products bearing counterfeit versions of the GE Trademarks, Defendants have used, and on information and belief continue to use, the trademarks referenced above to compete unfairly with General Electric and GE Appliances and to deceive customers.  Upon information and belief, Defendants' wrongful conduct misleads and confuses customers and the public as to the origin and authenticity of the goods and services advertised, marketed, offered, or sold in connection with the GE Trademarks and wrongfully trades upon General Electric's and GE Appliances' goodwill and business reputations.

106.    Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false or misleading representation that products originate from or are authorized by General Electric or GE Appliances, all in violation of 15 U.S.C. § 1125(a)(1)(A).

107.    Defendants' conduct also constitutes willful false statements in connection with goods and/or services distributed in interstate commerce in violation of 15 U.S.C. § 1125(a)(1)(B).

108.    General Electric and GE Appliances are entitled to an injunction against Defendants, their officers, agents, representatives, servants, employees, successors and assigns, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below.  Defendants' acts have caused irreparable injury to General Electric and GE Appliances that, on information and belief, is continuing.  An award of monetary damages cannot fully compensate General Electric and GE Appliances for their injuries, and General Electric and GE Appliances lack an adequate remedy at law.

109.    General Electric and GE Appliances are further entitled to recover Defendants'
profits, General Electric's and GE Appliances' damages for their losses, and General Electric's
and GE Appliances' costs to investigate and remediate Defendants' conduct and bring this
action, including their attorneys' fees, in an amount to be determined.  General Electric and GE
Appliances are also entitled to the trebling of any damages award as allowed by law.

## THIRD CLAIM
### *(by Amazon against all Defendants)*
### False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a)

110.    Plaintiff Amazon incorporates by reference the allegations of the preceding
paragraphs as though set forth herein.

111.    Amazon's reputation for trustworthiness is at the heart of its relationship with
customers.  Defendants' actions in selling counterfeits pose a threat to Amazon's reputation
because they undermine and jeopardize customer trust in the Amazon Store.

112.    The Defendants deceived Amazon and its customers about the authenticity of the
products they were advertising, marketing, offering, and selling, in direct and willful violation of
the BSA and Amazon's Anti-Counterfeiting Policies.  The Defendants' deceptive acts were
material to Amazon's decision to allow the Defendants to sell their products in the Amazon Store
because Amazon would not have allowed the Defendants to do so but for their deceptive acts.

113.    In advertising, marketing, offering, and selling counterfeit GE products in the
Amazon Store, Defendants made false and misleading statements of fact about the origin,
sponsorship, or approval of those products in violation of 15 U.S.C. § 1125(a)(1)(A).

114.    Defendants' acts also constitute willful false statements in connection with goods
and/or services distributed in interstate commerce in violation of 15 U.S.C. § 1125(a)(1)(B).

115.    As described above, Defendants, through their illegal acts, have willfully
deceived Amazon and its customers, jeopardized the trust that customers place in the Amazon
Store, tarnished Amazon's brand and reputation, and harmed Amazon and its customers.
Defendants' misconduct has also caused Amazon to expend significant resources to investigate
and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from
causing further harm to Amazon and its customers.  Defendants' illegal acts have caused

irreparable injury to Amazon and, on information and belief, that injury is ongoing at least to the extent that Defendants continue to establish selling accounts under different or false identities. An award of monetary damages alone cannot fully compensate Amazon for its injuries, and thus Amazon lacks an adequate remedy at law.

116.    Amazon is entitled to an injunction against Defendants, their officers, agents, representatives, servants, employees, successors and assigns, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below, along with its attorneys' fees and costs in bringing this lawsuit.

### FOURTH CLAIM
#### *(by all Plaintiffs against all Defendants)*
**Violation of Washington Consumer Protection Act, RCW 19.86.010 et seq.**

117.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth herein.

118.    Defendants' advertising, marketing, offering, and selling of counterfeit GE-branded products constitute an unfair method of competition and unfair and deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020.

119.    Defendants' advertising, marketing, offering, and selling of counterfeit GE-branded products harm the public interest by deceiving customers about the authenticity, origins, and sponsorship of the products.

120.    Defendants' advertising, marketing, offering, and selling of counterfeit GE-branded products directly and proximately cause harm to and tarnish Plaintiffs' reputations and brands, and damage their business and property interests and rights.

121.    Accordingly, Plaintiffs seek to enjoin further violations of RCW 19.86.020 and recover their attorneys' fees and costs.  General Electric and GE Appliances further seek to recover their actual damages, trebled.

### VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A.    That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, servants, employees, successors, and assigns, and all others in active

concert or participation with them, from:

      (i)        selling products in Amazon's stores;

      (ii)       selling products to Amazon or any affiliate;

      (iii)     opening or attempting to open any Amazon selling accounts;

      (iv)     manufacturing, distributing, offering to sell, or selling any product using General Electric's brand or trademarks, or which otherwise infringes General Electric's intellectual property, on any platform or in any medium; and

      (v)      assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referenced in subparagraphs (i) through (iv) above.

B.     That the Court enter judgment in Plaintiffs' favor on all claims brought by them;

C.     That the Court enter an order pursuant to 15 U.S.C. § 1116 impounding and permitting destruction of all counterfeit and infringing products bearing the GE Trademarks or that otherwise infringe General Electric's IP, and any related materials, including business records and materials used to reproduce any infringing products, in Defendants' possession or under their control;

D.     That the Court enter an order requiring Defendants to provide Plaintiffs a full and complete accounting of all amounts due and owing to Plaintiffs as a result of Defendants' unlawful activities;

E.     That Defendants be required to pay all general, special, and actual damages which General Electric and GE Appliances have sustained, or will sustain as a consequence of Defendants' unlawful acts, plus the Defendants' profits from the unlawful conduct described herein, together with General Electric's and GE Appliances' statutory damages, and that General Electric's and GE Appliances' damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117(b) and (c), RCW 19.86.020, or otherwise allowed by law;

F.     That Defendants be ordered to pay the maximum amount of prejudgment interest authorized by law;

G.      That Defendants be required to pay the costs of this action and Plaintiffs' reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law;

H.      That the Court enter an order requiring that identified financial institutions restrain and transfer to Plaintiffs all amounts arising from Defendants' unlawful counterfeiting activities as set forth in this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case; and

I.      That the Court grant Plaintiffs such other, further, and additional relief as the Court deems just and equitable.

Dated this 11th day of August, 2022

FENWICK & WEST LLP
*Attorneys for Plaintiffs*


By: */s/ Brian D. Buckley*
    Brian D. Buckley (WSBA No. 26423)

1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone:  206.389.4510
Facsimile:  206.389.4511
Email:        bbuckley@fenwick.com

Jedediah Wakefield *(pro hac vice* forthcoming*)*
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:  415.281.1350
Email:        jwakefield@fenwick.com

*Attorneys for Plaintiffs*