UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, INC., et al.,                    CASE NO. C22-1120JLR

                            Plaintiffs,      ORDER

              v.

KEXLEWATERFILTERS, et al.,

                            Defendants.

## I.      INTRODUCTION

Before the court is Plaintiffs Amazon.com, Inc., Amazon.com Services LLC (together, "Amazon"), General Electric Company, and Haier US Appliance Solutions, Inc.'s (together, "GE," and collectively, "Plaintiffs") *ex parte* motion for alternative service of process.  (Mot. (Dkt. # 18).)  Plaintiffs seek leave to serve 16 named Defendants[1] using the email addresses associated with their Amazon.com selling

_____

[1] These Defendants are the individuals and entities doing business as the following Amazon selling accounts:  KexleWaterFilters, HOM-POWER Store, NO-MIIMS, CLANORY,

ORDER - 1

accounts.  (*See generally* Mot.)  None of the Defendants have been served and none have

appeared in this action.  (*See generally* Dkt.)  The court has considered the motion, all

materials submitted in support of the motion, the relevant portions of the record, and the

governing law.  Being fully advised, the court DENIES Plaintiffs' *ex parte* motion for

alternative service of process without prejudice.

## II.     BACKGROUND

Amazon and GE bring claims against 16 named Defendants for allegedly selling

counterfeit GE-branded refrigerator water filters on Amazon.com that infringe on GE's

registered trademarks (the "GE Trademarks").  (Compl. ¶ 3 (describing the GE

Trademarks); *id.* ¶¶ 6-7, 53-87 (describing the allegedly infringing products and the

named Defendants' alleged roles in advertising, marketing, offering, and selling those

products).)  Amazon asserts that once it verified that the named Defendants were selling

counterfeit GE-branded products, it shut down those Defendants' Amazon selling

accounts (the "Selling Accounts") and issued full refunds to customers who purchased

the counterfeit products.  (*Id.* ¶ 93.)

Four of the named Defendants provided business addresses in the United States

when they created their Selling Accounts.  (*Id.* ¶¶ 13, 15, 19, 28.)  The remaining named

Defendants provided business addresses in China.  (*Id.* ¶¶ 14, 16-18, 20-27.)  Each named

Defendant also provided an email address and banking information for its Selling

---

Tomorrow-Citystor, HOMASZ, Romarotic, Dropsales, Tamei-US, DanielJames, icepy,
WanHaoFilter, HNAMZ-US, DOOBOO-US, Purtech, and Barcelona-US.  (Compl. (Dkt. # 1)
¶¶ 13-28.)  Plaintiffs also allege claims against ten unknown Doe Defendants whom they allege
work "in active concert with each other and the named Defendants."  (*Id.* ¶ 29.)

1    Account.  (*Id.* ¶ 47.)  Amazon alleges that these Defendants "took active steps to mislead

2    Amazon and conceal their true locations and identities by providing false information."

3    (*Id.*)  Plaintiffs have "attempted to uncover these Defendants' identities and locations by

4    analyzing Amazon's records about the Selling Accounts, [and] enlisting private

5    investigators who used both public records and investigative tools to research the contact

6    information Defendants provided to Amazon when registering the Selling Accounts," but

7    despite their efforts, Plaintiffs have been "unable to locate the true identities of the

8    Defendants or their current whereabouts."  (2/7/23 Lewis Decl. (Dkt. # 19) ¶ 3.)

9        Plaintiffs filed their complaint for damages and equitable relief on August 11,

10   2022.  (Compl. at 1.)  Plaintiffs then attempted to serve six of the Defendants[2] at the most

11   recent U.S. business addresses they had provided to Amazon, but in each case, Plaintiffs'

12   process server was unable to locate an appropriate individual on whom to serve the

13   complaint, and Plaintiffs determined that the addresses these Defendants had provided

14   were false, not associated with the Defendants, or invalid.  (2/7/23 Lewis Decl. ¶ 3.)  For

15   the remaining Defendants, Plaintiffs' investigation revealed that many of the U.S. and

16   Chinese addresses provided by the Defendants "do not correspond with any location or

17   are not affiliated with Defendants."  (*Id.* ¶ 4.)  Plaintiffs also had investigators research

18   the most recently provided business addresses in China for ten of the Defendants.  (*Id.*

19   ¶ 5.)  The investigators found that for seven of these Defendants the addresses were

20

21

22   ———————————
     [2] Barcelona-US, CLANORY, DooBoo-US, HNAMZ-US, KexleWaterFilters, and
     Tomorrow-CityStor.  (Lewis Decl. ¶ 3.)

ORDER - 3

1  inaccurate or not associated with Defendants' businesses, and for three of the Defendants,

2  the investigators were unable to confirm whether the addresses were invalid.  (*Id.*)

3        Plaintiffs then moved *ex parte* for expedited discovery in an effort to determine

4  Defendants' true identities. (Disc. Mot. (Dkt. # 11).)  The court granted the motion on

5  October 26, 2022.  (10/26/22 Order (Dkt. # 14).)  Specifically, the court authorized

6  Plaintiffs to "serve Rule 45 subpoenas to obtain information regarding Defendants' true

7  identities, locations, and the scope of the alleged counterfeiting scheme" from certain

8  third-party banks, email address providers, and storage facilities, and inbound shipping

9  addresses.  (*Id.*; *see* Disc. Mot. at 2-3.)  On November 9, 2022, the court granted

10  Plaintiffs' *ex parte* motion for an extension of time to serve the named Defendants to

11  allow Plaintiffs to complete the expedited discovery.  (11/9/22 Order (Dkt. # 17).)  The

12  results of Plaintiffs' subpoenas have been disappointing:  Plaintiffs did not receive a

13  response from CitiBank; First Century Bank responded that it does not create or maintain

14  the requested records; Deutsche Bank was unable to locate responsive documents; Wells

15  Fargo was unable to provide the requested information because it was unable to locate the

16  businesses or account numbers associated with the Selling Accounts; UPLUS's facility

17  appeared to be permanently closed when service was attempted; Microsoft Corporation is

18  still collecting information; and Payoneer, Inc. has produced information indicating that

19  four Defendants—Dropsales, Tamei-US, icepy, and Purtech—are likely located in China.

20  (2/7/23 Lewis Decl. ¶ 6.)

21        Plaintiffs now ask the court to authorize them to serve the named Defendants

22  using the email addresses associated with the Defendants' Selling Accounts.  (Mot.; *see*

2/7/23 Haskel Decl. (Dkt. # 20) ¶ 5 (listing the email addresses Defendants provided

when they registered their Selling Accounts).)  Plaintiffs do not indicate whether they

have attempted to contact any of the Defendants using the email addresses associated

with their Selling Accounts, nor do they represent that any of the Defendants have notice

that this lawsuit is pending.  (*See generally* 2/7/23 Lewis Decl.; 2/7/23 Haskel Decl.)

### III.     ANALYSIS

Federal Rule of Civil Procedure 4(h) governs service of process on foreign

businesses.  Fed. R. Civ. P. 4(h).  Rule 4(h)(2) authorizes service of process on a foreign

corporation "at a place not within any judicial district of the United States, in any manner

prescribed by Rule 4(f) for serving an individual, except personal delivery under

(f)(2)(C)(i)."  Fed. R. Civ. P. 4(h)(2).  Rules 4(f)(1) and 4(f)(2) provide specific methods

of serving process on individuals in foreign countries.  *See* Fed. R. Civ. P. 4(f)(1)-(2).

Rule 4(f)(3) allows international service by a method not listed in Rule 4(f)(1) or (2) if

the method is "not prohibited by international agreement, as the court orders."  Fed. R.

Civ. P. 4(f)(3); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-15

(9th Cir. 2002).  As long as the method of service is "court-directed and not prohibited by

an international agreement, service of process ordered under Rule 4(f)(3) may be

accomplished in contravention of the laws of the foreign country."  *Rio Props.*, 284 F.3d

at 1014.  "Service under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief'";

rather, "[i]t is merely one means among several which enables service of process on an

international defendant."  *Id.* at 1015.

1    "Even if facially permitted by Rule 4(f)(3)," however, "a method of service of

2    process must also comport with constitutional notions of due process." *Id.* at 1016.

3    Thus, the "method of service crafted by the district court must be 'reasonably calculated,

4    under all the circumstances, to apprise interested parties of the pendency of the action and

5    afford them an opportunity to present their objections.'" *Id.* at 1016-17 (quoting *Mullane*

6    *v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Thus, the court proceeds

7    to analyze (1) whether service of process by email is permitted under Rule 4(f)(3) and

8    (2) whether that method comports with due process.

9    **A.     Rule 4(f)(3)**

10    First, the court must determine whether service of process on defendants in China

11    by email is "prohibited by international agreement."  Fed. R. Civ. P 4(f)(3).  The court

12    concludes that service of process by email is not prohibited by international agreement

13    and is therefore permitted by Rule 4(f)(3).

14    China is a signatory to the Hague Convention.  *See* Contracting Parties, Hague

15    Conference on Private International Law, https://www.hcch.net/en/instruments/

16    conventions/status-table/?cid=17 (last visited February 15, 2023).  At the outset, it is

17    questionable whether the Hague Convention applies to the facts of this case.  The Hague

18    Convention expressly does not apply where the address of the foreign defendant is

19    unknown.  *See* Hague Convention, art. 1 ("This Convention shall not apply where the

20    address of the person to be served with the document is not known."); *see also*

21    *Amazon.com v. Tian*, No. C21-0159TL, 2022 WL 486267, at *3 (W.D. Wash. Feb. 17,

22    2022) (citing cases that authorized service by email where the defendants' physical

addresses were unknown).  Thus, here, where Plaintiffs have been unable to identify valid physical business addresses for the named Defendants, the Hague Convention arguably does not apply in the first instance and therefore does not prohibit service of process by email.

Even if the Hague Convention applies, the court concludes that service by email is a permissible method of service under Rule 4(f)(3).  Service through a country's Central Authority is the principal means of service under the Hague Convention.  *See Rubies Costume Co. v. Yiwu Hua Hao Toys Co., Ltd.*, No. C18-1530RAJ, 2019 WL 6310564, at *2 (W.D. Wash. Nov. 25, 2019).  Article 10 of the Hague Convention, however, "preserves the ability of parties to effect service through means other than a recipient-nation's Central Authority as long as the recipient-nation has not objected to the specific alternative means of service used."  *Id.* (citing Hague Convention, art. 10).  China has expressly rejected service through the means enumerated in Article 10, including service through postal channels and through its judicial officers.  *Id.*; *see* Declaration/Reservation/Notification, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn (last visited February 15, 2023) (stating the People's Republic of China "oppose[s] the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention").  Article 10, however, does not mention service by email or other electronic communications, and multiple courts in the Ninth Circuit have concluded that China's objection to Article 10 does not prohibit alternative service of process by electronic communications to defendants located in China.  *See Rubies Costume Co.*, 2019 WL

6310564, at *3 (citing cases authorizing service on defendants located in China via email and/or online messaging systems); *id.* at *4 (authorizing service of process on defendants located in China via email and Amazon.com seller account storefronts).  Consistent with these cases, the court concludes that the Hague Convention and Rule 4(f)(3) do not prohibit service of process on Defendants by email.

**B.    Due Process**

Second, the court considers whether service of process on Defendants using the email addresses associated with their Selling Accounts comports with constitutional due process—that is, whether this method of service is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane*, 339 U.S. at 314.

Plaintiffs rely on several cases for their argument that service of process on Defendants by email is appropriate here.  (Mot. at 6; *id.* at 6 n.2.)  In most of these cases, however, there were indicia that the defendants would in fact receive notice of the lawsuit if the plaintiffs served them by email.  In *Rio Properties*, 284 F.3d at 1017, for example, the plaintiff emailed the summons and complaint to the defendant's international courier, which provided the documents to the defendants' attorney, who in turn refused to receive service of process on behalf of his client.  In *Keck v. Alibaba.com, Inc.*, No. 17-CV-05672-BLF, 2018 WL 3632160, at *2 (N.D. Cal. July 31, 2018), the plaintiff's private investigator sent test messages to the defendants' Alibaba.com or AliExpress.com storefronts through the AliExpress.com message system.  The investigator did not receive any error messages; none of the messages were returned as undeliverable; and many of

the defendants responded to the messages. *Id.* The same is true in *Bright Solutions for Dyslexia, Inc. v. Lee*, No. 15-CV-01618-JSC, 2017 WL 10398818, at *3 (N.D. Cal. Dec. 20, 2017), *report and recommendation adopted*, No. 15-CV-01618-CW, 2018 WL 4927702 (N.D. Cal. Mar. 26, 2018), in which the plaintiff's investigator sent messages to the associated email addresses and received no errors from at least two of the addresses. *See also Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. 15-0246-DOC (DFMX), 2016 WL 1251008, at *3 (C.D. Cal. Mar. 25, 2016) (granting alternative service where plaintiff had successfully sent messages to the defendants' email addresses).

The court agrees with the approach set forth in these cases, and concludes that the due process requirement for alternative service by email is satisfied when the plaintiff demonstrates that the email addresses at issue are valid and are successfully receiving messages. For example, in *Amazon.com, Inc. v. Tian*, No. C21-00159TL, 2022 WL 486267, at *3 (W.D. Wash. Feb. 17, 2022), the court denied alternative service by email where there was no evidence that the defendants had actual notice of the lawsuit and where the plaintiffs did not point to "recent communications with the defendants that demonstrated the reliability of the proposed form of alternative service." *See also Padded Spaces LLC v. Weiss*, No. C21-0751JLR, 2022 WL 1423701, at *2 (W.D. Wash. May 5, 2022) (granting alternative service by email where counsel had successfully sent messages about the lawsuit and a copy of the complaint to the email addresses associated with the defendant's Selling Account and through its Amazon.com storefront). Here, Plaintiffs have not demonstrated that the email addresses associated with Defendants' Selling Accounts are still valid email addresses and that service of process via email is

1  likely to provide Defendants with notice of this lawsuit.  (*See generally* 2/7/23 Lewis

2  Decl.; 2/7/23 Haskel Decl.)  Therefore, the court DENIES Plaintiffs' motion for

3  alternative service by email without prejudice.  Plaintiffs may renew their motion with

4  evidence of recent communications to Defendants that demonstrates that service by email

5  is a reliable method to provide Defendants with notice of the pendency of this action.

6  **IV.    CONCLUSION**

7  For the foregoing reasons, the court DENIES Plaintiffs' *ex parte* motion for

8  alternative service of process (Dkt. # 18) without prejudice to renewing their motion with

9  evidence that Defendants' Selling Account email addresses remain a reliable means of

10  communicating with Defendants.

11  Dated this 15th day of February, 2023.

14  JAMES L. ROBART
   United States District Judge

ORDER - 10