1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, INC., et al.,

               Plaintiffs,

   v.

KEXLEWATERFILTERS, et al.,

              Defendants.

CASE NO. C22-1120JLR

ORDER

## I.    INTRODUCTION

Before the court is Plaintiffs Amazon.com, Inc., Amazon.com Services LLC, (together, "Amazon"), General Electric Company ("GE"), and Haier US Appliance Solutions, Inc., doing business as GE Appliances's ("GEA," and together with Amazon and GE, "Plaintiffs") *ex parte* motion for default judgment against Defendants Tan Mei (doing business as the Amazon selling account Tamei-US), Dao Ping Yang (doing business as the Amazon selling account icepy), and Liping Yang (doing business as the Amazon selling account Purtech) (together, "Defendants").  (Mot. (Dkt. # 45).)  The

1    court has reviewed Plaintiffs' motion, the relevant portions of the record, and the

2    governing law.  Being fully advised,[1]  the court GRANTS Plaintiffs' motion for entry of

3    default judgment and for a permanent injunction.

4                                    **II.     BACKGROUND**

5         This action arises out of Defendants' alleged operation of selling accounts on

6    Amazon.com through which they sold counterfeit GE-branded water filters.  (*See* Am.

7    Compl. (Dkt. # 34) ¶¶ 67-103 (describing each Defendant's alleged sales activity); *see id.*

8    ¶¶ 3-6 (describing the GE trademarks and GEA's role in manufacturing GE-branded

9    appliances); *see also* Parent Decl. (Dkt. # 46) ¶ 2, Ex. A (copies of registration

10   certificates for the GE trademarks).)  According to Plaintiffs, Defendants sold hundreds

11   of thousands of dollars' worth of products bearing counterfeit versions of GE's registered

12   trademarks through their Amazon selling accounts between August 2019 and June 2021.

13   (Am. Compl. ¶¶ 67-103; *see* Haskel Decl. (Dkt. # 48) ¶ 3 (summarizing the sales made

14   through each selling account).)

15        Plaintiffs originally filed this case on August 11, 2022, against 16 Amazon selling

16   accounts and ten unknown Doe Defendants.  (*See generally* Compl. (Dkt. # 1).[2])  On

17   October 26, 2022, the court granted Plaintiffs' *ex parte* motion to expedite discovery for

18

19        [1] Defendants have not appeared in this case (*see* Dkt.) and Plaintiffs do not seek oral
20   argument (*see* Mot. at 1).  The court finds oral argument unnecessary to its disposition of the
     motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

21        [2] These Defendant selling accounts are KexleWaterFilters, HOM-POWER Store,
     NO-MIIMS, CLANORY, Tomorrow-Citystor, HOMASZ, Romarotic, Dropsales, Tamei-US,
22   DanielJames, icepy, WanHaoFilter, HNAMZ-US, DOOBOO-US, Purtech, and Barcelona-US.
     (Compl. ¶¶ 13-28.)

1  the purpose of identifying the individuals or entities responsible for the selling accounts.

2  (10/26/22 Order (Dkt. # 14); *see* Mot. to Expedite (Dkt. # 11).)

3        On September 28, 2023, Plaintiffs moved the court for leave to amend their

4  complaint to name ten individuals whom their investigation had determined were

5  responsible for certain of the Defendant selling accounts.  (*See generally* Mot. to Amend

6  (Dkt. # 31).)  The court granted the motion, and Plaintiffs filed their amended complaint

7  shortly thereafter.  (9/29/23 Order (Dkt. # 33); Am. Compl.)  On November 15, 2023, the

8  court granted Plaintiffs leave to serve the newly named individual Defendants by email.

9  (11/15/23 Order (Dkt. # 37); 3d Serv. Mot. (Dkt. # 36).)  Plaintiffs served the individual

10  Defendants on December 4, 2023.  (Service Cert. (Dkt. # 38).)

11        On January 9, 2024, Plaintiffs moved for entry of default as to the ten individual

12  Defendants and voluntarily dismissed their claims against the Amazon selling accounts

13  for which they had not identified any associated individuals.  (Default Mot. (Dkt. 39);

14  1/9/24 Not. (Dkt. # 40).)  The Clerk entered default as to the individual Defendants on

15  January 10, 2024.  (Entry of Default (Dkt. # 41).)

16        On May 24, 2024, Plaintiffs voluntarily dismissed their claims against seven of the

17  individual Defendants.  (5/24/24 Not. (Dkt. # 44).)  They filed the instant motion for

18  default judgment against the remaining three Defendants on that same day.  (*See* Mot.)

19  **III.   ANALYSIS**

20        Below, the court considers its jurisdiction over this action, sets forth the legal

21  standard for evaluating a motion for default judgment, and determines whether Plaintiffs

22  have satisfied the requirements for entry of default judgment.

**A.    Jurisdiction**

As a preliminary matter, a court evaluating a motion for default judgment "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  The court concludes that it has jurisdiction to decide Plaintiffs' motion.

First, the court has federal question subject matter jurisdiction over this action based on Plaintiffs' Lanham Act claims for trademark infringement, false designation of origin, and false advertising.  *See* 15 U.S.C. § 1121(a) (providing district courts original jurisdiction over actions arising under the Lanham Act); 28 U.S.C. § 1331 (providing district courts original jurisdiction over civil actions arising under the laws of the United States); 28 U.S.C. § 1338 (providing district courts original jurisdiction over civil actions arising under any federal statute relating to trademarks); *see also* 28 U.S.C. § 1367 (providing district courts supplemental jurisdiction over related state-law claims).

Second, the court has personal jurisdiction over Defendants because, taking the factual allegations in the complaint as true, (1) Defendants transacted business using a Washington state company as its sales platform, reached out to do business with Washington residents through that platform, and sold counterfeit products to Washington residents; (2) Plaintiffs' claims arose from these contacts with Washington state; and (3) the Amazon Business Solutions Agreement ("BSA") between Defendants and Amazon contains a forum selection clause setting jurisdiction in this court.  (Am. Compl. ¶¶ 42-43; *id.* Ex. B ("BSA")); *see Expensify, Inc. v. Swappoint AG*, No. 22-CV-05720-LB, 2023 WL 6323103, at *4 (N.D. Cal. Sept. 28, 2023) ("Specific

1   jurisdiction exists when the suit arises out of or relates to the defendant's contacts with

2   the forum." (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014))).

3         Having determined that it has jurisdiction over the subject matter and the parties,

4   the court proceeds to consider Plaintiffs' motion for default judgment.

5   **B.    Legal Standard**

6         Federal Rule of Civil Procedure 55(b)(2) authorizes the court to enter default

7   judgment against a defaulted defendant upon the plaintiff's motion.  Fed. R. Civ. P. 55(a),

8   (b)(2).  After the court enters default, the well-pleaded factual allegations in the

9   complaint, except those related to damages, are considered admitted and are sufficient to

10  establish a defendant's liability.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18

11  (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

12        Entry of default judgment is left to the court's sound discretion.  *Aldabe v. Aldabe*,

13  616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its discretion, courts in the Ninth

14  Circuit consider the seven "*Eitel* factors":  (1) the possibility of prejudice to the plaintiff

15  if relief is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency

16  of the claims raised in the complaint; (4) the sum of money at stake in relationship to the

17  defendant's behavior; (5) the possibility of a dispute concerning material facts;

18  (6) whether default was due to excusable neglect; and (7) the preference for decisions on

19  the merits when reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.

20  1986).  If the court determines that default judgment is appropriate, it must then

21  determine the amount and character of the relief that should be awarded.  *See TeleVideo*,

22  826 F.2d at 917-18.

1  **B.    The *Eitel* Factors**

2       Plaintiffs argue that the *Eitel* factors favor entry of default judgment against all

3  three Defendants.  (*See* Mot. at 5-9 (arguing that Plaintiffs have established Defendants'

4  liability on each claim); *id.* at 9-10 (discussing the remaining *Eitel* factors).)  The court

5  agrees with Plaintiffs.

6       1.    Possibility of Prejudice to Plaintiffs

7       Under the first *Eitel* factor, the court considers whether the plaintiff will suffer

8  prejudice if default judgment is not entered.  *See PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F.

9  Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Without default judgment, Plaintiffs will suffer

10 prejudice because they will "be denied the right to judicial resolution" of their claims and

11 will be "without other recourse for recovery."  *Elektra Ent. Grp. Inc. v. Crawford*, 226

12 F.R.D. 388, 392 (C.D. Cal. 2005).  Thus, the first *Eitel* factor weighs in favor of entering

13 default judgment.

14      2.    Substantive Merits and Sufficiency of the Complaint

15      "The second and third *Eitel* factors—the substantive merits of the plaintiff's claim

16 and the sufficiency of the plaintiff's complaint—are often analyzed together."  *Curtis v.*

17 *Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citing *PepsiCo*,

18 238 F. Supp. 2d at 1175).  For these factors to weigh in favor of default judgment, the

19 complaint's allegations must state a claim for relief.  *See Danning v. Lavine*, 572 F.2d

20 1386, 1388 (9th Cir. 1978).  A complaint satisfies this standard when it "contain[s]

21 sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

22 face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

1  550 U.S 544, 570 (2007)).  At the default judgment stage, the court "must take the

2  well-pleaded factual allegations [in the complaint] as true" but "necessary facts not

3  contained in the pleadings, and claims which are legally insufficient, are not established

4  by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *see*

5  *also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (declining to take as

6  true "allegations that parrot the language of" the relevant statute).

7       Plaintiffs assert that they have plausibly alleged that Defendants are liable for

8  trademark infringement, false designation of origin, and violations of the WCPA.  (Mot.

9  at 5-9.[3])  The court reviews each claim in turn.

10           *a.*    *Trademark Infringement*

11       First, GE seeks entry of default judgment on its claim that Defendants infringed its

12  trademarks in violation of the Lanham Act, 15 U.S.C. § 1114.  (Mot. at 5-7; *see* Am.

13  Compl. ¶¶ 108-14.)  To state a claim for trademark infringement under § 1114(1)(a), GE

14  must plausibly allege that Defendants used:

15       (1) a reproduction, counterfeit, copy or colorable imitation of [the] plaintiff's
16       registered trademark, (2) without its consent, (3) in commerce, (4) in
     connection with the sale, offering for sale, distribution or advertising of any
     goods, (5) where such use is likely to cause confusion, or to cause a mistake
17       or to deceive.

18  *Amazon.com v. Kurth*, No. C18-0353RAJ, 2019 WL 3426064, at *2 (W.D. Wash. July

19  30, 2019) (citing 15 U.S.C. § 1114(1)(a) and *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921,

20  929 (9th Cir. 2014)).  "Likelihood of confusion exists when consumers viewing the mark

21

22     [3] Plaintiffs voluntarily dismiss without prejudice the false advertising claims they pleaded
with their false designaton of origin claims.  (*See* Mot. at 7 n.3; Am. Compl. ¶¶ 115-30.)

1    would probably assume that the goods it represents are associated with the source of a

2    different product identified by a similar mark." *KP Permanent Make-Up, Inc. v. Lasting*

3    *Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005).  When a defendant uses a

4    counterfeit mark, courts presume that there is a likelihood of consumer confusion.  *See*

5    *Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631MJP, 2013 WL 5406220, at *3

6    (W.D. Wash. Sept. 25, 2013) (compiling cases).  The Lanham Act defines a "counterfeit"

7    as "a spurious mark which is identical with, or substantially indistinguishable from, a

8    registered mark." *Id.* (quoting 15 U.S.C. § 1127).

9        Taking Plaintiffs' factual allegations as true, GE has plausibly alleged that it owns

10   the trademarks at issue (Am. Compl. ¶ 3; Parent Decl. ¶ 2, Ex. A) and that Defendants

11   sold products on Amazon (that is, in commerce) that bore counterfeit imitations of those

12   trademarks (Am. Compl. ¶¶ 87, 91, 99).  Thus, the court presumes a likelihood of

13   consumer confusion, *see Coach, Inc.*, 2013 WL 5406220, at *3, and concludes that GE

14   has met its burden to demonstrate Defendants' liability for trademark infringement.

15           b.    *False Designation of Origin*

16       Second, all three Plaintiffs assert that they are entitled to default judgment on their

17   claims for false designation of origin under 15 U.S.C. § 1125(a).  (Mot. at 7-8; *see* Am.

18   Compl. ¶¶ 115-23 (pleading claim on behalf of GE and GEA), 124-30 (pleading claim on

19   behalf of Amazon).)  To state a claim for false designation of origin, Plaintiffs must

20   plausibly allege that Defendants:

21       (1) used in commerce (2) any word, false designation of origin, false or
         misleading description, or representation of fact, which (3) is likely to cause

22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question.

*Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (citing *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007)); 15 U.S.C. § 1125(a)(1)(A).  A plaintiff need not own the trademarks that are infringed to state a claim for trademark infringement.  *See Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1114 (S.D. Cal. 2018).

Again taking the well-pleaded allegations as true, the court concludes that Plaintiffs have demonstrated that Defendants are liable on default judgment for false designation of origin because Plaintiffs have plausibly alleged that Defendants sold products through their Amazon selling accounts that bore counterfeit GE trademarks. (*See* Am. Compl. ¶¶ 87, 91, 99); *Coach, Inc.*, 2013 WL 5406220, at *3.

       c.     *Washington Consumer Protection Act*

Finally, Plaintiffs assert that they are entitled to default judgment on their WCPA claim.  (Mot. at 8-9; *see* Am. Compl. ¶¶ 131-35.)  To state a claim for violation of the WCPA, Plaintiffs must plausibly allege that (1) an unfair or deceptive act or practice, (2) occurred in the course of trade or commerce, (3) impacted the public interest, (4) injured the plaintiff's business or property, and (5) was caused by the defendant. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986); RCW 19.86.020.  A WCPA claim "may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the

ORDER - 9

1    public, or an unfair or deceptive act or practice not regulated by statute but in violation of

2    public interest." *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013).

3         Federal trademark claims brought under the Lanham Act are "substantially

4    congruous" to state claims under the CPA. *BBC Grp. NV LLC v. Island Life Rest. Grp.*

5    *LLC*, No. C18-1011RSM, 2020 WL 758070, at *2 (W.D. Wash. Feb. 14, 2020) (quoting

6    *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010)).

7    Indeed, "[a] finding of trademark infringement constitutes an 'unfair or deceptive act'"

8    and "satisfies the 'affecting public interest prong'" under the WCPA "because it involves

9    deception or confusion of the public." *Id.* at *2-3 (citing *Nordstrom, Inc. v. Tampourlos*,

10   733 P.2d 208, 210 (Wash. 1987)).  Thus, because Plaintiffs have established that

11   Defendants are liable for trademark infringement, they have also established Defendants'

12   liability under the WCPA.  As a result, the court concludes that the second and third *Eitel*

13   factors weigh in favor of entering default judgment.

14        3.    Sum of Money at Stake

15        Under the fourth *Eitel* factor, "the court must consider the amount of money at

16   stake in relation to the seriousness of [the d]efendant's conduct." *PepsiCo*, 238 F. Supp.

17   2d at 1176.  Here, Plaintiffs ask the court to award GE statutory damages of three times

18   the total sales of counterfeit GE-branded water filters made through Defendants' Amazon

19   selling accounts.  They seek $426,622 from Tan Mei, $293,978 from Dao Ping Yang, and

20   $38,351 from Liping Yang, for a total award of $758,951.  (Mot. at 13-15 (citing Haskel

21   Decl. ¶ 3).)  These amounts are well within the range of statutory damages authorized by

22   Congress for the willful use of a counterfeit mark. *See* 15 U.S.C. § 1117(c)(2)

1    (authorizing the court to award up to $2,000,000 per counterfeit mark); *Derek Andrew,*

2    *Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (holding that complaint's

3    willful infringement allegations were deemed true after default); (Am. Compl. ¶¶ 8, 104,

4    121, 126, 128-29 (alleging Defendants engaged in willful conduct)).  The court concludes

5    that the fourth *Eitel* factor does not weigh against default judgment.

6            4.      Possibility of a Dispute over Material Facts

7            Courts evaluating the fifth *Eitel* factor "consider[] the possibility of dispute as to

8    any material facts in the case."  *PepsiCo*, 238 F. Supp. 2d at 1177.  "When default has

9    been entered, courts find that there is no longer the possibility of a dispute concerning

10   material facts because the court must take the plaintiff's factual allegations as true."

11   *Curtis*, 33 F. Supp. 3d at 1212.  Because default has already been entered against

12   Defendants (*see* Entry of Default), the court concludes that the fifth *Eitel* factor weighs in

13   favor of default judgment.

14           5.      Excusable Neglect

15           Under the sixth *Eitel* factor, courts consider the possibility that the defendant's

16   default resulted from excusable neglect.  *PepsiCo*, 238 F. Supp. 2d at 1177.  Plaintiffs

17   have provided evidence that Defendants were properly served (*see* Service Cert.); the

18   court entered default against Defendants (*see* Entry of Default); and there is no evidence

19   in the record that would support a finding that any Defendant's failure to answer or

20   respond is the result of excusable neglect.  Accordingly, the court concludes that the sixth

21   *Eitel* factor weighs in favor of default judgment.

22

1          <u>6.</u>   <u>Policy Favoring Decisions on the Merits</u>

2          "Cases should be decided upon their merits whenever reasonably possible." *Eitel*,

3   782 F.2d at 1472.  Where, as here, a defendant fails to appear or defend itself in the

4   action, however, the policy favoring decisions on the merits is not dispositive.  *PepsiCo*,

5   238 F. Supp. 2d at 1177.  Therefore, the court concludes that the seventh *Eitel* factor does

6   not preclude entry of default judgment.  As a result, because of the *Eitel* factors either

7   favor or do not weigh against entry of default judgment, the court concludes that default

8   judgment is appropriate here.

9   **C.   Requested Relief**

10         Having determined that the *Eitel* factors favor entry of default judgment, the court

11  now turns to the question of remedies.  "A default judgment must not differ in kind from,

12  or exceed in amount, what is demanded in the [complaint]."  Fed. R. Civ. P. 54(c); *see*

13  *Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962).  Defaulting defendants are not

14  deemed to have admitted the facts alleged in the complaint concerning the amount of

15  damages.  *TeleVideo*, 826 F.2d at 917.  Rather, the plaintiff "must 'prove up' the amount

16  of damages that it is claiming."  *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219

17  F.R.D. 494, 501 (C.D. Cal. 2003); *see also* Local Rules W.D. Wash. LCR 55(b)(2)

18  (requiring a plaintiff moving for default judgment to submit "a declaration and other

19  evidence establishing [the] plaintiff's entitlement to a sum certain and to any

20  nonmonetary relief sought").  By analogy, the plaintiff must also "prove up" its

21  entitlement to other forms of relief, such as a permanent injunction.  *See Gucci Am., Inc.*

22  *v. Tyrrell–Miller*, 678 F. Supp. 2d 117, 120-21 (S.D.N.Y. 2008).

ORDER - 12

1        1.    <u>Statutory Damages</u>

2        Under the Lanham Act, a plaintiff may elect whether to recover the actual

3  damages caused by a defendant's use of a counterfeit mark or statutory damages.

4  15 U.S.C. § 1117(c).  GE and GEA have elected to seek statutory damages.  (Mot. at

5  11-15; *see* Am. Compl. § VI.E (including an award of statutory damages to GE and GEA

6  in Plaintiffs' prayer for relief).)  If the court finds that a defendant's use of a counterfeit

7  mark was willful, it has discretion to award statutory damages of "not more than

8  $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or

9  distributed, as the court considers just."  15 U.S.C. § 1117(c)(2).  Because Plaintiffs'

10  allegation that Defendants willfully infringed the two GE trademarks is deemed true, the

11  court may award up to $4,000,000 in statutory damages.  (*See* Am. Compl. ¶¶ 3, 6

12  (describing GE's trademarks); *id.* ¶¶ 8, 25-26, 28-29, 36-37, 104, 121, 126, 128-29

13  (alleging Defendants engaged in willful conduct)); *Derek Andrew, Inc.*, 528 F.3d at 702.

14  "[S]tatutory damages may compensate the victim, penalize the wrongdoer, deter future

15  wrongdoing, or serve all those purposes."  *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995,

16  1008 (9th Cir. 2023) (citing *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007,

17  1011 (9th Cir. 1994)).  The plaintiff, however, "is not entitled to a windfall."  *Yelp Inc. v.*

18  *Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (citing *Adobe Sys., Inc. v. Tilley*, No.

19  C 09-1085 PJH, 2010 WL 309249, at *5-6 (N.D. Cal. Jan. 19, 2010)).  Therefore, courts

20  consider whether the amount of statutory damages requested bears a "plausible

21  relationship to [the p]laintiff's actual damages."  *Id.* (quoting *Adobe Sys., Inc.*, 2010 WL

22  309249, at *5).

1    Here, GE and GEA seek an award of three times the aggregate sales of counterfeit

2    GE-branded water filters made through Defendants' Amazon selling accounts.  (Mot. at

3    14-15.)  According to Amazon, Tan Mei sold a total of $142,207.44 in counterfeit

4    GE-branded water filters through the Tamei-US selling account; Dao Ping Yang sold

5    $97,992.95 in counterfeit GE-branded water filters through the icepy selling account; and

6    Liping Yang sold $12,783.74 in counterfeit GE-branded water filters through the Purtech

7    selling account.  (Haskel Decl. ¶ 3; *see also* Buckley Decl. (Dkt. # 49) ¶¶ 2-5 (describing

8    how Plaintiffs' law firm linked the individual Defendants to their Amazon selling

9    accounts).)  Thus, Defendants seek an award of $426,622 in statutory damages against

10   Tan Mei; an award of $293,978 in statutory damages against Dao Ping Yang; and an

11   award of $38,351 in statutory damages against Liping Yang.  (Mot. at 14-15.)

12        The court concludes that these awards are (1) consistent with the amounts awarded

13   by other courts in this District for similar conduct, (2) proportional to the damages GE

14   and GEA actually suffered, and (3) sufficient to deter Defendants from further willful

15   infringement, but (4) not so large as to result in a windfall for GE and GEA.  *See, e.g.*,

16   *Amazon.com, Inc. v. Sirowl Tech.*, No. C20-1217RSL-JRC, 2022 WL 19000499, at *5

17   (W.D. Wash. Oct. 3, 2022) (awarding statutory damages of three times Defendants'

18   aggregate sales of counterfeit products); *Amazon.com, Inc. v. White*, No. C20-1773JHC,

19   2022 WL 1641423, at *5 (W.D. Wash. May 24, 2022) (same).  Therefore, the court

20   grants Plaintiffs their requested statutory damages awards.

21

22

1        2.    <u>Permanent Injunctive Relief</u>

2        Plaintiffs ask the court to enter an order permanently enjoining and restraining

3    "Defendants and their officers, agents, servants, employees, and attorneys, and other

4    persons who are in active concert or participation with them who receive actual notice of

5    the order" from:

6        a.    selling counterfeit or infringing products in Amazon's stores;
         b.    selling counterfeit or infringing products to Amazon or any Amazon
7            affiliate;
         c.    manufacturing, importing, distributing, offering to sell, or selling any
8            product using the GE brand or trademarks, or which otherwise
             infringes GE's intellectual property, in any store or in any medium;
9            and
         d.    assisting, aiding, or abetting any other person or business entity in
10           engaging in or performing any of the activities listed in (a) through (c)
             above.
11
     (Mot. at 16-20; Prop. Order (Dkt. # 45-1) at 2.)  The Lanham Act empowers courts "to
12
     grant injunctions, according to the principles of equity and upon such terms as the court
13
     may deem reasonable, to prevent the violation of any right of the registrant of a mark."
14
     15 U.S.C. § 1116(a).  The WCPA also authorizes injunctions to prevent violations of the
15
     statute.  *See* RCW 19.86.090.  A plaintiff seeking a permanent injunction must
16
     demonstrate:
17
         (1) that it has suffered an irreparable injury; (2) that remedies available at
18       law, such as monetary damages, are inadequate to compensate for that injury;
         (3) that, considering the balance of hardships between the plaintiff and
19       defendant, a remedy in equity is warranted; and (4) that the public interest
         would not be disserved by a permanent injunction.
20
     *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (interpreting similar
21
     language in considering a motion for permanent injunctive relief under the Patent Act).
22

ORDER - 15

1   "Generally, an injunction must be narrowly tailored to remedy only the specific harms

2   shown by a plaintiff, rather than to enjoin all possible breaches of the law." *Kurth*, 2019

3   WL 3426064, at \*5-6 (holding that an injunction against the defendant from "opening

4   any Amazon Seller Accounts or otherwise selling products on any of Amazon's

5   websites" would be overbroad (citing *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th

6   Cir. 2004))); (*see also Am*. Compl. § VI.A (seeking an injunction with broader terms than

7   those Plaintiffs request here).)

8          First, Plaintiffs satisfy the "irreparable injury" element because a plaintiff seeking

9   a permanent injunction under the Lanham Act "shall be entitled to a rebuttable

10  presumption of irreparable harm upon a finding of a [trademark] violation." 15 U.S.C.

11  § 1116(a).

12         Second, remedies available at law are inadequate because Plaintiffs allege that

13  Defendants' sales of counterfeit GE products through Amazon both threaten and have

14  injured their businesses, reputations and goodwill. (*See, e.g.*, Am. Compl. ¶¶ 114, 119,

15  125, 129, 134.) "Harm resulting from . . . lost customer goodwill is irreparable because it

16  is neither easily calculable, nor easily compensable" and thus cannot be remedied by a

17  monetary award. *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D.

18  Cal. 2000) (citing *Cal. ex rel. Van de Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d

19  1316, 1319 (9th Cir. 1985)). In addition, Defendants' failure to appear in this action

20  suggests that their infringing behavior may continue absent an injunction. *See*

21  *Amazon.com Inc. v. Robojap Techs. LLC*, No. C20-0694MJP, 2021 WL 5232130, at \*4

22  (W.D. Wash. Nov. 10, 2021) (so holding).

1    Third, the balance of hardships supports Plaintiffs.  Absent an injunction,

2  Defendants could continue to sell counterfeit GE products and sell counterfeit products

3  on Amazon.com, thus causing continuing harm to Plaintiffs.  And because Defendants

4  never had a right to infringe GE's trademarks in the first place, they will suffer no harm

5  from an injunction prohibiting unlawful infringement in the future.  *See, e.g.*, *Eve Nev.,*

6  *LLC v. Derbyshire*, No. C21-0251LK, 2022 WL 279030, at *9 (W.D. Wash. Jan. 31,

7  2022) (finding the balance of hardships favored plaintiffs because the defendant "would

8  suffer no injury other than refraining from her infringing conduct").

9    Finally, entering a permanent injunction would serve the general public's interest

10  in protecting trademark holders' rights and minimizing the confusion caused by the

11  presence of counterfeit products in the marketplace.  *See Treemo, Inc. v. Flipboard, Inc.*,

12  53 F. Supp. 3d 1342, 1368 (W.D. Wash. 2014) ("[I]njunctive relief serves the public

13  interest by protecting the rights of trademark holders against infringement and also

14  minimizing consumer confusion."); *Internet Specialties W., Inc. v. Milon-DiGiorgio*

15  *Enters., Inc.*, 559 F.3d 985, 993-94 (9th Cir. 2009) ("The essence of trademark

16  infringement is the likelihood of confusion, and an injunction should be fashioned to

17  prevent just that.").  The court concludes, therefore, that Plaintiffs' requested permanent

18  injunction is warranted.

### IV.    CONCLUSION

20    For the foregoing reasons, the court GRANTS Plaintiffs' motion for default

21  judgment (Dkt. # 45) and ORDERS as follows:

22    1.    The court awards GE and GEA statutory damages in the amount of three

1   times the aggregate sales of counterfeit products from each Defendant's respective

2   Amazon selling accounts, based on Defendants' willful violations of the Lanham Act as

3   follows:

4       a.   An award of $426,622 against Tan Mei for counterfeit sales from the

5            Tamei-US selling account.

6       b.   An award of $293,978 against Dao Ping Yang for counterfeit sales

7            from the icepy selling account.

8       c.   An award of $38,351 against Liping Yang for counterfeit sales from

9            the Purtech selling account.

10      2.   Defendants and their officers, agents, servants, employees, and attorneys,

11  and other persons who are in active concert or participation with them who receive actual

12  notice of the order, are permanently enjoined and restrained from:

13      a.   selling counterfeit or infringing products in Amazon's stores;

14      b.   selling counterfeit or infringing products to Amazon or any Amazon

15           affiliate;

16      c.   manufacturing, importing, distributing, offering to sell, or selling

17           any product using the GE brand or trademarks, or which otherwise

18           infringes GE's intellectual property, in any store or in any medium;

19           and

20      d.   assisting, aiding, or abetting any other person or business entity in

21           engaging in or performing any of the activities listed in (a) through

22           (c) above.

1        3.      Plaintiffs' false advertising claims are DISMISSED without prejudice.  (*See*

2 Mot. at 7 n.3) (voluntarily dismissing these claims).)

3        4.      The court retains jurisdiction over this case for the purpose of enforcing this

4 order and injunction, and for any supplemental proceedings that may be authorized by

5 law.

6        5.      Plaintiffs' counsel are DIRECTED to serve a copy of this order and the

7 accompanying judgment to Defendants at the last email addresses known to be used by

8 Defendants or at the last physical address at which they received service.

9        Dated this 30th day of May, 2024.

10

11

12                         JAMES L. ROBART
                         United States District Judge

13

14

15

16

17

18

19

20

21

22

ORDER - 19